Adopted w/out [illegible] qualification.

S/ RJD
RAYMOND DEARIE
UNITED STATES DISTRICT JUDGE


# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 15-CV-6686 (RJD) (RER)

TRUSTEES OF THE PAVERS AND ROAD BUILDERS DISTRICT COUNCIL WELFARE, PENSION, ANNUITY AND APPRENTICESHIP, SKILL IMPROVEMENT AND SAFETY FUNDS AND THE HIGHWAY, ROAD AND STREET CONSTRUCTION LABORERS LOCAL UNION 1010,

Plaintiffs,

VERSUS

TRI STATE CONSTRUCTION & MASONRY CORP., HUDSON INSURANCE COMPANY, AND AMERICAN FIRE AND CASUALTY COMPANY,

Defendants.

## REPORT & RECOMMENDATION

May 11, 2017

To the Honorable Raymond J. Dearie,
Senior United States District Judge

**RAMON E. REYES, JR., U.S.M.J.:**

Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds (collectively the "Funds"), and the Highway, Road, and Street Construction Laborers Local Union 10101 (the "Union") (collectively "Plaintiffs"), commenced this action against Defendant Tri State Construction & Masonry Corp. ("Tri State") on November 20, 2015. (Dkt. No. 1). Plaintiffs brought this action pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as well as Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. (Dkt. No. 1, Complaint ("Compl.") ¶ 1). Plaintiffs filed an Amended Complaint against Tri State and added claims against Hudson Insurance Company ("Hudson") and American Fire and Casualty Company ("American Fire") on February 18, 2016. (Dkt. No. 8, Amended Complaint, ("AC")). Plaintiffs have since voluntarily dismissed their claims against Hudson and American Fire. (Dkt. Nos. 35, 37). To date, Tri State has not filed an

1

appearance or participated in this action. (Dkt. Nos. 7, 22).

On September 27, 2016, Plaintiffs requested a certificate of default against Tri State. (Dkt. No. 21). On September 28, 2016, the Clerk of the Court entered default. (Dkt. No. 22). On September 30, 2016, Plaintiffs filed a motion for default judgment. (Dkt. No. 23). Plaintiffs seek $47,268.22 in damages and $5,787.21 in attorney's fees and costs from Tri State. (Dkt. No. 29, ("Plaintiffs' Memo") at 10). Your Honor has referred Plaintiff's motion to me for a report and recommendation. (*See* Dkt. Entry dated Oct. 27, 2016).

For the reasons stated below, I respectfully recommend that Plaintiffs' motion for default judgment be granted. I further recommend that the Court award: $2,190.41 in outstanding contributions from the April 2014 audit, interest on the sum of $1,801.55 to be calculated by the Clerk of the Court at an annual rate of 10% from April 28, 2014 through the date of final judgment, and punitive damages in the amount of $438.08. I also recommend that the Court award Plaintiffs interest on previous late payments in the amount of $2,558.19 and $4,667.21 in attorney's fees and costs.

## BACKGROUND

The Funds are employee benefit plans within the meaning of 29 U.S.C. § 1002(3) and are "trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c)." (AC ¶ 4). The Funds also act as collection agents for the Union. (*Id.* ¶ 10). Tri State is an employer that is a party to a collective bargaining agreement ("CBA") with the Union. (*Id.* ¶¶ 6, 9; Dkt. No. 24-1). The CBA incorporates and binds the parties to certain trust agreements as well as a Collection Policy. (AC ¶¶ 14–16; *see also* Dkt. Nos. 26-1, 26-2). Pursuant to the CBA, Tri State is required to remit certain moneys, including dues check-offs, to Plaintiffs for work performed on its behalf "within the trade and geographical jurisdiction of the Union." (AC ¶¶ 10, 11). The CBA establishes an annual interest rate of 10% for overdue fringe benefits. (*Id.* ¶ 12). The CBA also requires that Tri State make its books and records available for inspection. (*Id.* ¶ 19; *see also* Dkt. Nos. 24-1 at 28–29, 26-2 at 1).

In April 2014, the Funds conducted an audit of Tri State's books and records for the time period from March 1, 2011 through December 31, 2013, which revealed that Tri State failed to make contributions in the amount of $16,828.00 during that time. (AC ¶ 21; *see also* Dkt. No. 25, Declaration of Robert Castiglia, ("Castiglia Decl.") ¶¶ 3, 5). Plaintiffs claim that $2,190.41 of that amount remains outstanding. (AC ¶ 21).[1] As a consequence, Plaintiffs seek the outstanding contributions along with interest owed based on an annual rate of 10% and liquidated damages at 20% of the principal amount of the delinquency. (*Id.* ¶ 21).

Plaintiffs also claim that Tri State failed to remit contributions and dues check-offs pursuant to the CBA totaling $25,612.26 for a separate period from August 2014 through June 2015. (*Id.* ¶ 25).[2] The CBA also requires Tri State to report to the Funds on a

---

[1] The AC articulates that the Funds are owed $1,801.55 in past dues check-offs and $388.86 in other contributions. (AC ¶ 21).

[2] The AC articulates that the Funds owed from this period comprise of $24,831.03 in contributions and $781.23 in dues check-offs and other contributions. (AC ¶ 25).

2

monthly basis the number of hours of applicable work performed by each employee. (*Id.* ¶ 24). Plaintiffs allege that Tri State failed to do so for the month of December 2014, and the period of July 2015 through December 2015.[3] (*Id.* ¶ 25). Plaintiffs claim that Tri State therefore also owes the Funds unpaid contributions and dues check-offs in an unknown amount for this period. (*Id.*).

Plaintiffs seek: (1) unpaid contributions and dues check-offs totaling $2,190.41 along with interest and punitive damages; (2) $25,612.26 in unpaid contributions and dues check-offs for August 2014 through June 2015 along with interest and punitive damages; (3) an unknown amount of unpaid contributions and dues check-offs for December 2014 and the period from July through December of 2015; (4) interest on previous late payments in the amount of $2,558.19; and (5) the attorney's fees, expenses and costs incurred in prosecuting this suit. (*Id.* ¶¶ 23-49).

## DISCUSSION

The Federal Rules of Civil Procedure provide "a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.* 647 F.3d 497, 504 (2d. Cir. 2011). First, the clerk of the court must enter a party's default upon being advised that the party has "failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Then, in cases where the relief sought is not "a sum certain or a sum that can be made certain by computation," the party seeking relief "must apply to the court for a default judgment."

Fed. R. Civ. P. 55(b)(1), (b)(2); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

Tri State has failed to appear in this action, respond to the Complaint, or otherwise challenge the default. (*See* Dkt. No. 22). The clerk has therefore appropriately entered default. Further, Plaintiffs have applied to this Court for default judgment in accordance with Fed. R. Civ. P. 55(b). (Dkt. No. 23). Accordingly, Plaintiffs have satisfied the two-step process for obtaining a default judgment.

## I. LIABILTIY

After the clerk enters the default of a party, the Court accepts all the well-pleaded allegations in the complaint as true. *Greyhound Exhibitgroup Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158–59 (2d Cir. 1992). However, the Court must decide whether those pleadings are sufficient to establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)).

Section 515 of ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and

---

[3] At some points, the AC states that the relevant time period ends in September 2015. (AC ¶¶ 28, 35). However, Plaintiffs revert to identifying December in the second claim for relief and the prayer for relief. (AC ¶ 38; AC at 12). The Court will treat the date of December listed in the prayer for relief as controlling. *See Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) ("defendants will look to the demand clause [of the complaint] to understand their exposure in the event of default").

conditions of such plan or such agreement.

29 U.S.C. § 1145 (2012). ERISA "does not require employers to provide any particular benefits, but once an employer does elect to provide benefits, ERISA regulates the terms of administration . . . [and requires the employer to] do so in accordance with the relevant multi-employer plan or collective bargaining agreement." *Finkel v. Metro Elec. Control Systems Ltd.*, No. 10–cv–2012 (CBA) (JO), 2012 WL 4049803, at *4 (E.D.N.Y. 2012). Further, Section 301 of the LMRA authorizes this Court to enforce valid CBAs.

The CBA here requires Tri State to remit contributions and dues check-offs to the Funds as well as submit to the Funds a record of the number of hours worked by each employee. (AC ¶¶ 23, 24; *see also* Dkt. No. 24-1). Plaintiffs adequately allege that: (1) they are owed any unpaid contributions and dues check-offs along with interest and punitive damages that remain outstanding from the April 2014 audit; (2) they are entitled to known unpaid contributions and dues check-offs for August 2014 through June 2015; (3) under the CBA, Tri State is liable for whatever unknown amount of dues check-offs and other contributions are owed from December 2014 and July 2015 through December 2015; (4) under New York law, Tri State is liable for interest on late payments of dues check-offs and contributions; and (5) Tri State is liable for the attorney's fees, expenses, and costs that Plaintiffs have incurred in prosecuting this suit. In defaulting, Tri State admits its liability for violating the CBA, LMRA, and ERISA with regards to the claims stated above. *Greyhound*, 973 F.2d at 158–59.

## II. DAMAGES

While the Court accepts all well-pleaded allegations as to liability, it must determine on its own the extent of damages. *Id.* The burden rests with the plaintiff "to establish its entitlement to recovery. *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Daniel Weintraub & Assocs., Inc.*, No. 04-CV-2611 (FB) (CLP), 2007 WL 4125453, at *3 (E.D.N.Y. Nov. 16, 2007). In addition, "Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that on the matter of damages 'the court may conduct such hearings or order such references as it deems necessary and proper.' The rule 'allows but does not require the district judge to conduct a hearing.'" *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993) (citations omitted); Fed. R. Civ. P. 55(b)(2).

I find that an evidentiary hearing is not warranted in this case. *See W. Heritage Ins. Co. v. Jacobs Dev. Corp.*, No. 12-CV-5718 (NGG) (LB), 2014 WL 297792, at *4 (E.D.N.Y. Jan. 27, 2014) (noting that district courts are not required to hold hearings where "[d]etailed affidavits and other documentary evidence can suffice") (quoting *Chanel, Inc. v. Louis*, No. 06-CV-5924 (ARR) (JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009)). Additionally, the Federal Rules of Civil Procedure provide that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). This provision "anticipates that defendants will look to the demand clause [of the complaint] to understand their exposure in the event of default." *Silge v. Merz*, 510 F.3d at 160. This is of course subject to the exception for "damages that accrued during the pendency of the litigation if the complaint put the defendant on notice that plaintiff might seek such damages." *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010).

### A. Outstanding Delinquent Contributions

ERISA provides that in successful actions such as this, "the court shall award the plan (A) the unpaid contributions." 29 U.S.C. § 1132(g)(2)(A) (2012). Plaintiffs seek such contributions for various time periods.

In April 2014, Castiglia LLP performed an audit of Tri State's books and records for the period of March 1, 2011 through December 31, 2013. (Castiglia Decl. ¶¶ 2, 3). The audit revealed that Tri State owed the Funds a total of $16,828.00 for that period. (*Id.* ¶ 5; Dkt. No. 25-1). Plaintiffs claim that of the $16,828.00, "contributions in the amount of $1,801.55 and dues check-offs and other contributions to the Union in the amount of $388.86 remain outstanding." (AC ¶ 21). This amounts to an outstanding balance of $2,190.41. The Declaration of Joseph Montelle, however, states that $8,759.00 of the balance from the April 2014 audit remains outstanding. (Dkt. No. 26, ("Montelle Decl.") ¶ 10). In support of this claim, Montelle appends two remittance reports totaling $8,069.00—the difference between the principal amount and the amount claimed to be owing. (Dkt. No. 26-3).

The declarations and exhibits do not establish that Plaintiffs are entitled to $8,579.00. The AC put Tri State on notice that it was liable for a total of $2,190.41 for outstanding dues check-offs and contributions from the prior audit. Further, on a default judgment, the Court is constrained to awarding at most the relief sought in the complaint. Fed. R. Civ. P. 54(c); *Triple A Grp., Inc.*, 708 F. Supp. 2d at 282. Moreover, the outstanding dues owed from the prior audit were ascertainable before this action commenced. Accordingly, I respectfully recommend that Plaintiffs be awarded $2,190.41 in outstanding contributions from the April 2014 audit.

### B. Other Delinquent Contributions

Plaintiffs allege that Tri State owes the Union $25,612.26 in contributions and dues check-offs for the period of August 2014 through June 2015. (AC ¶ 25). Plaintiffs also claim that Tri State owes the Funds an unknown amount of contributions and dues check-offs for the period of December 2014 and July 2015 through December 2015. (*Id.* at 12).[4]

As to Plaintiffs' request for $25,612.26, Plaintiffs claim that Tri State submitted remittance reports to the Funds showing "the number of hours worked by its employees and the total amount of contributions owed to the Funds for work performed during the relevant months." (Montelle Decl. ¶ 11). Yet, Plaintiffs did not provide these remittance reports to the Court. The only support that Plaintiffs provide for these numbers is a single "Employer Discrepancy Status Report" that allegedly reflect amounts reported, but unpaid, by Tri State. (*Id.*; Dkt. No. 26-4).

This report is insufficient to substantiate Plaintiffs' request for $25,612.26. Not only does the report fail to reflect the period from August 2014 to June

---

[4] Plaintiffs later change both the relevant time period and amount of money owed from the AC. For example, Plaintiffs later claim that "Tri State failed to remit contributions for August 2014 and July through *August* 2015 in the amount of $19,781.08" as well as dues check-offs and other contributions to the Union "in the amount of $977.76." (Montelle Decl. ¶ 12). Plaintiffs' Memo then refers to *April* 2014, which is outside of any time period for which Plaintiffs originally sought relief. (Plaintiffs' Memo at 6).

2015, but the total adds up to $20,758.84, a different amount from that in the AC. (*See* Dkt. No. 26-4). Based on the multitude of discrepancies in Plaintiffs' submissions as well as the lack of evidentiary support for Plaintiffs' demand for $25,612.26 from the Complaint, I recommend that this Court deny Plaintiffs' request for such damages.[5]

As to Plaintiffs request for the unknown amount of contributions and dues check-offs owed for the period of December 2014 and July 2015 through December 2015, nowhere in the AC do Plaintiffs request an audit to substantiate the compensation owed; and as such, this Court is not at liberty to issue monetary relief on such dues.

### C. Interest

ERISA provides for the payment of "interest on the unpaid contributions . . . [at] the rate provided under the plan." 29 U.S.C. § 1132(g)(2) (2012). The CBA establishes an annual interest rate of 10% on delinquent fringe benefits. (AC ¶ 12; Dkt. No. 26-2 at 3).

#### a. Outstanding Delinquent Contributions

Plaintiffs seek interest on the outstanding contributions from the April 2014 audit. As the Court has already determined, the outstanding contributions to amount to $1,801.55 for outstanding unpaid contributions and $388.86 in outstanding dues check-offs. Of these, only the $1,801.55 constitute fringe benefits. Plaintiffs are therefore entitled to collect interest on the $1,801.55 at a rate of 10% per annum from the date those contributions became due and owing. *See Finkel*, 708 F. Supp. 2d at 286–87 (E.D.N.Y. 2010). Here, Plaintiffs fail to specify the date upon which the contributions became due and owing. Because the original audit revealing the delinquent contributions was conducted on or before April 28, 2014, annual interest has been accruing since at least then. (*See* Dkt. No. 25-1). Therefore, I recommend that the amount of interest on the unpaid contributions should be calculated by the Clerk of Court from the date of the audit through the date final judgment is entered.

Plaintiffs also seek interest from September 30, 2016—the date Plaintiffs filed their Motion for Default Judgment—through the date of judgment. (Dkt. No. 29 at 10). Plaintiffs did not seek such interest in the AC.[6] Therefore, Tri State was not put on notice that Plaintiffs were seeking those damages. Accordingly, I recommend that Plaintiffs not receive such interest. *See* Fed.

---

[5] This Court has warned Plaintiffs that such an outcome would result if their legal requests continued to be unsupported. *See Trustees of the Local 7 Tile Indus. Welfare Fund v. Alp Stone, Inc.*, No. 12-CV-5974 (NGG) (RER), 2015 WL 4094615, at *6 (E.D.N.Y. June 17, 2015), *report and recommendation adopted*, No. 12-CV-5974 (NGG) (RER), 2015 WL 4112449 (E.D.N.Y. July 7, 2015) ("I would be remiss if I did not mention that this is not the first time that the law firm representing Plaintiffs, Virginia & Ambinder LLP, has failed to provide the Court with accurate calculations and complete submissions. On a number of occasions this Court has had to recalculate various plaintiffs' damages because the documentation and calculations provided by plaintiffs' counsel were replete with inaccuracies. In the future, if incorrect calculations are submitted to this Court, this Court will not recalculate and reconstruct damages based on what evidence is presented, but instead disallow recovery as a whole. It is not the Court's job nor duty to perform such calculations in the first instance, rather the Court is to insure that such calculations presented are arithmetically sound and supported, both factually and legally.").

[6] While Plaintiffs do seek such interest on their third, fourth, fifth, and sixth claims for relief, all of those claims are against Hudson or American Fire and have since been voluntarily dismissed. (AC at 12, 13; Dkt. No. 35; Dkt. No. 37).

R. Civ. P. 54(c); *Triple A Grp., Inc.*, 708 F. Supp. 2d at 282.

### b. Other Delinquent Contributions

Plaintiffs also seek interest on the unpaid contributions for the period of August 2014 and July through December 2015.[7] (AC ¶ 35). Since I recommended above that this Court not grant Plaintiffs' request for those unpaid contributions, I further recommend that this Court not grant Plaintiffs' request for interest on those damages.

### c. Previous Late Payments

ERISA does not provide for the payment of interest on delinquent contributions that were in fact paid before the filing of the action. *See Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995). Nonetheless, "where a contribution is paid late in violation of the CBA, the LMRA provides a statutory basis for enforcing the relevant contractual terms. *Finkel v. Fervent Elec. Corp.*, No. 13-CV-3289 (NGG) (RER), 2015 WL 1469560, at *5 (E.D.N.Y. Feb. 23, 2015), *report and recommendation adopted as modified*, 2015 WL 1469728 (E.D.N.Y. Mar. 30, 2015).

Here, Plaintiffs seek interest in the amount of $2,558.19 for late contribution payments. (AC ¶ 27).[8] However, Plaintiffs' Memo changes this number to $5,230.13 and clarifies that the relevant time period is June 2012, December 2013, April through June of 2014, and February through July of 2015. (Plaintiffs' Memo at 5). In support of this claim, Plaintiffs provide a "Billing Status Report" that shows each month of late payments, when the payment was actually made, and how much interest is owing to each fund for each such month. (See Dkt. No. 26-6).

Again, the Court is unable to award damages that differ in kind, or exceed in amount, those listed in the complaint. Accordingly, I recommend that Plaintiffs receive $2,558.19 in interest for previous late payments.

### D. Liquidated Damages

ERISA entitles successful litigants to receive liquidated damages in an amount equal to the greater of: the amount provided for in the plan up to 20% or the amount of interest on unpaid contributions. 29 U.S.C. § 1132(g)(2)(C) (2012). Here, Plaintiffs seek liquidated damages in the amount of 20% of the amount adjudged to be due and owing from the April 2014 audit, as well as 20% on the alleged delinquency of $28,540.08. (AC at 12, ¶ 22; Plaintiffs' Memo at 8; Montelle Decl. ¶ 3).

Because the Court finds that the Plaintiffs have not established their entitlement to $25,612.26 in unpaid contributions and dues check-offs for August 2014 through 2015, they may not seek liquidated damages on such unpaid contributions. The Court finds that Plaintiffs are only entitled to liquidated damages of 20% on the outstanding principle of $2,190.41 from the April 2014 audit, which amounts to $438.08. Accordingly, the Court

---

[7] Plaintiffs later change this period to July through August 2015. (Plaintiffs' Memo at 8).

[8] Plaintiffs' Memo changes this number to $5,230.13 and clarifies that the relevant time period is June 2012, December 2013, April through June of 2014, and February through July of 2015. (Plaintiffs' Memo at 5). In support of this claim, Plaintiffs provide a late payment interest report that shows each month of late payments, when the payment was actually made, and how much interest is owing to each fund for each such month. (See Dkt. No. 26-6).

recommends awarding Plaintiffs $438.08 in liquidated damages.

### E. Attorney's Fees and Costs

Pursuant to ERISA, litigants successful in enforcing multiemployer plans under collective bargaining agreements are entitled to "reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D) (2012). Since Plaintiffs have proved that Tri State is liable under ERISA, they are entitled to their reasonable attorney's fees and costs, as determined by this Court. (AC. at 12).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded." *Crescent Publ'g Group, Inc. v. Playboy Enters.*, 246 F.3d 142, 151 (2d Cir. 2001). Nevertheless, "the court may exclude hours that it finds to be excessive, duplicative, or unnecessary." *Gesualdi v. T & M Specialties, Ltd.*, No. CV 09-49 (ENV) (VVP), 2011 WL 1326648, at *3 (E.D.N.Y. Feb. 18, 2011), *report and recommendation adopted*, 2011 WL 1253734 (E.D.N.Y. Mar. 31, 2011) (citations omitted).

The declaration of Nicole Marimon states that Plaintiffs' firm charged $200 per hour for associates and $80 per hour for legal assistants. (Dkt. No. 27, ("Marimon Decl.")) ¶ 7). The principle associate that worked on this case graduated from law school in 2014, and is therefore a junior associate.[9] (*Id.* ¶ 8).

In a default judgment ERISA case such as this, "the range of appropriate billing rates is . . . $100–$295 per hour for associates." *Gesualdi v. Giacomelli Tile Inc.*, No. 09-CV-0711 (JS), 2010 WL 1049262, at *3 (E.D.N.Y. Mar. 18, 2010). However, courts in this District have recently lowered the requested rate for Ms. Marimon down to $150 per hour. *Trustees of the Local 7 Tile Indus. Welfare Fund v. Richard's Improvement Bldg. Inc.*, No. CV153898 (JS) (AKT), 2016 WL 6110455, at *14 (E.D.N.Y. Aug. 1, 2016); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation v. Dipizio Constr., Inc.*, No. 15CV2592 (JFB) (AYS), 2016 WL 3033722, at *6 (E.D.N.Y. May 25, 2016). Therefore, I find the reasonable rate for Ms. Marimon in this case to be $150 per hour. Since Plaintiffs provide no information as to the attorney listed as "TH," I find the appropriate rate to be $100 per hour. This District has found rates of $90 per hour for paralegals to be reasonable. *See McMahon-Pitts v. Sokoloff*, No. 15-CV-4975, 2017 WL 1011473, at *4 (E.D.N.Y. Mar. 15, 2017). Therefore, I find Plaintiffs' requested rate for paralegals of $90 per hour to be reasonable.

Exhibit D of the Marimon Decl. shows that Ms. Marimon billed 21.5 hours, the attorney listed as "TH" billed 1.2 hours and the legal assistants billed 7.5 hours on this case, for a combined total of 30.2 hours.[10] (Dkt. No. 27-4). I find this to be a reasonable number of hours for this kind of case. *See Bakery & Confectionery Union & Indus. Int'l*

---

[9] The invoice shows that another associate listed as "TH" billed a total of 1.2 hours, but billed at the same rate of $200 per hour. (Dkt. No. 27-4 at 4).

[10] Plaintiffs' Memo states that "Plaintiffs' attorneys and their assistants spent a total of 5.1 hours on this case." (Plaintiffs' Memo at 5). However, the Marimon Decl. and the exhibits thereto establish that 30.2 hours is the correct number, and it is the only number that corresponds to their final calculation of $5,140. (Marimon Decl.; Dkt. No. 27-4).

8

*Pension Fund v. Ges Bake Shop, Inc.*, No. 13-CV-728 (FB) (CLP), 2014 WL 1159821, at *10 (E.D.N.Y. Mar. 21, 2014) (finding 31.2 hours of work reasonable in a "relatively straightforward ERISA" default judgment case). At the rates above, Plaintiffs' attorney's fees total $4,020.00.

Plaintiffs also seek costs totaling $647.21 for court filing fees, postage, and related costs. (Marimon Decl. ¶ 10). "A prevailing party is entitled to compensation for out-of-pocket expenses that are normally charged to the client." *Gesualdi v. T & M Specialties, Ltd.*, 2011 WL 1326648, at *4 (citing *United States Football League v. National Football League*, 887 F.2d 408, 416 (2d. Cir. 1989)); *see also Gesualdi v. Lubco Transp. Inc.*, No. CV156727ADSARL, 2017 WL 946297, at *4 (E.D.N.Y. Feb. 22, 2017), *report and recommendation adopted*, 2017 WL 943937 (E.D.N.Y. Mar. 9, 2017) (approving similar costs). Thus, I find Plaintiffs' requested costs reasonable.

In sum, I recommend awarding Plaintiffs a total of $4,667.21 as reasonable attorney's fees and costs.

## CONCLUSION

Based on the foregoing, I respectfully recommend that the Court grant Plaintiffs' motion for a default judgment. I further recommend that the Court award: $2,190.41 in outstanding contributions from the April 2014 audit, interest on the sum of $1,801.55 to be calculated by the Clerk of the Court at an annual rate of 10% from April 28, 2014 through the date of final judgment, and liquidated damages in the amount of $438.08. I also recommend that the Court award Plaintiffs interest for previous late payments in the amount of $2,558.19 and $4,667.21 in attorney's fees and costs.

Plaintiffs are hereby directed to serve copies of this Report and Recommendation upon Tri State by next-day mail by May 16, 2017, at each of their last known addresses, and to promptly file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Raymond J. Dearie within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED.

*Ramon E. Reyes, Jr.*
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: May 11, 2017
Brooklyn, NY

9